UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JODY BEACH and
RHONDA BEACH,

      Debtors.

Case no. 21-10762-ta13

## OPINION

Before the Court is a creditor's motion to dismiss this chapter 13 case, arguing that Debtors' unsecured debts exceed the eligibility limit. After a final evidentiary hearing, the Court concludes that the debts are within the statutory limit. The motion therefore will be denied.

A.     Facts.

The Court finds.[1]

Debtors worked for Iron Horse Welding LLC from April 2010 to August 2019. During most of that time, Debtors and Iron Horse's owner, Allen Grisham, were good friends. The relationship soured badly. Shortly after Debtors quit their Iron Horse jobs in August 2019, Iron Horse brought two state court actions against Mr. Beach. One of lawsuits suits resulted in a May 18, 2021, judgment against Mr. Beach for $325,000 ($175,000 in actual damages and $150,000 in punitive damages).[2] Iron Horse filed a judgment lien on June 15, 2021.

Jody and Rhonda Beach filed this chapter 13 case on June 18, 2021. Iron Horse is Debtors' largest creditor.

---

[1] The Court takes judicial notice of its docket and the dockets of Iron Horse's state court actions against Mr. Beach. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Mr. Beach filed a motion to reconsider the judgment, arguing, inter alia, that Iron Horse had not requested punitive damages. Litigation of that motion is stayed by the automatic stay.

Debtors filed their bankruptcy schedules on July 9, 2021. Schedule E/F lists liquidated, noncontingent unsecured claims of $157,660. Schedule D lists Iron Horse as a secured creditor with a $325,000 junior lien on Debtors' house (the "house"). Debtors valued the house at $538,000. Schedule D also lists Wells Fargo as a secured creditor with a $340,699 first mortgage on the house. In schedule C, Debtors claims a $120,000 homestead exemption in the house. Subtracting the Wells Fargo mortgage and the homestead exemption from $538,000 results in a $77,301 secured claim for Iron Horse and a $247,699 unsecured claim. Thus, Debtor's schedules reflect total noncontingent, liquidated, unsecured debts of $405,359.

On October 29, 2021, Iron Horse moved to dismiss Debtors' case, arguing that Debtors unsecured debt exceeded the $419,275 cap in 11 U.S.C. § 109(e).[3] According to Iron Horse's calculations, Debtors' liquidated, noncontingent, unsecured debts totaled $430,102.88, about $14,000 over the cap.

A bar date was set in this case for August 27, 2021. 29 claims were filed. Wells Fargo filed a claim for $341,472, secured by a first mortgage on the house. Iron Horse filed a judgment lien claim for $326,469, secured by a junior lien on the house, as well as four other claims. A total of $111,192.38 of unsecured claims were filed, other than Iron Horse's claims.

Debtors amended their schedules on November 19, 2021. The amended schedules reflect noncontingent, liquidated secured claims of $148,174.31. Adding Iron Horse's $247,699 judgment lien deficiency claim results in noncontingent, liquidated unsecured claims of $395,873.31. Debtors scheduled all of Iron Horse's unsecured claims as disputed, contingent, and unliquidated.

B.     Section 109(e).

Section 109(e) provides in part:

---

[3] Unless stated otherwise, all statutory references are to 11 U.S.C.

> Only . . . an individual with regular income and such individual's spouse . . . that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $419,275 . . . may be a debtor under chapter 13 of this title.

1. <u>Debts must be noncontingent</u>. Debts are contingent when they "do[] not come into existence until the occurrence of a future event." 3 Collier on Bankruptcy ¶109.06[2][b] (16th ed.). None of the debts under scrutiny are contingent.

2. <u>Debts must be liquidated</u>. A debt is considered liquidated if "the amount is readily and precisely determinable." 3 Collier on Bankruptcy ¶109.06[2][c]; *see also In re Rottiers*, 450 B.R. 208 (Bankr. D.N.M. 2011):

> The term "liquidated" is not defined in the Bankruptcy Code. However, it is well-settled that whether a debt is "liquidated" turns on whether the amount is "readily determinable." ...
> The amount of debt is readily determinable only if the process of determining the claim is fixed, certain, or otherwise determined by a specific standard. *See In re Barcal,* 213 B.R. 1008, 1014 (8th Cir. BAP 1997). On the other hand, if the value of the claim depends on a "future exercise of discretion, not restricted by specific criteria, the claim is unliquidated." *See Mazzeo v. United States (In re Mazzeo),* 131 F.3d 295, 304 (2d Cir. 1997) (internal quotation marks omitted).
> ...
> *Kanke v. Adams (In re Adams),* 373 B.R. 116, 119–20 (10th Cir. BAP 2007).

450 B.R. at 215.

3. <u>Evidence to be considered in determining eligibility</u>. Some courts have held that § 109(e) eligibility should be determined by reviewing the debtor's bankruptcy schedules, "checking only to see if the schedules were made in good faith." *See, e.g., In re Scovis*, 249 F.3d 975, 982 (9th Cir. 2001); *In re Pearson*, 773 F.2d 751, 756–57 (6th Cir. 1985). The test in the Tenth Circuit appears to be different. In *In re Murphy*, 146 Fed. Appx. 285 (10th Cir. 2005) (unpublished), the Tenth Circuit stated:

> After Murphy filed his petition, both the Trustee and the McArthurs made good faith objections to Murphy's Chapter 13 eligibility. At that point, it was proper for

the bankruptcy court to look past the characterization of Murphy's claims in his schedules and consider other evidence.

146 Fed. Appx, at 289. This view has support elsewhere. *See, e.g., In re Quintana*, 107 B.R. 234 (9th Cir. BAP 1989):

> However, the schedules are not dispositive. If the debtors' schedules were dispositive, then eligibility could be created by improper or incomplete scheduling of creditors. A bankruptcy court should "look past the schedules to other evidence submitted when a good faith objection to the debtor's eligibility has been brought by a party in interest." *In re Williams Land Co.,* 91 B.R. 923, 927 (Bankr. D. Or. 1988).

107 B.R. at 238 n.6; and *In re Barcal*, 213 B.R. 1008, 1015 (8th Cir. BAP 1997):

> Rather than making final determinations on disputed liabilities, it is appropriate for a court considering eligibility to rely primarily upon a debtor's schedules and proofs of claim, checking only to see if these documents were filed in good faith.... In so doing, however, the court should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor.... At a hearing on eligibility, the court should thus, canvass and review the debtor's schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits.

This Court addressed the issue in *In re Garcia*, 520 B.R. 848 (Bankr. D.N.M. 2014), holding that, "while a debtor's bankruptcy schedules are an important part of the § 109(e) eligibility analysis, the Court is not bound by them, even if they were submitted in good faith. Rather, the Court should be able to consider all readily available evidence, including claims filed, any liens that are obviously avoidable, and the like." 520 B.R. at 853.

C. <u>Iron Horse's Undersecured Judgment Lien Claim</u>.

Iron Horse was granted a $325,000 judgment against Mr. Beach on May 28, 2021. Iron Horse recorded a transcript of judgment on June 15, 2021, creating a judgment lien on the house.[4] On the petition date, the judgment lien totaled $326,469.18. To rule on the motion to dismiss, the Court must determine how much of Iron Horse's judgment lien is unsecured.

    1.    <u>Value of Debtors' House</u>. Debtors own a 2,786 square foot house in Rio Rancho, New Mexico. It is in very good condition, located on a large corner lot. Debtors valued the house at $538,000 in their bankruptcy schedules. Iron Horse's proof of claim on the judgment lien debt estimated the house's value at $536,000.

Both parties retained valuation experts. Debtors' expert witness, Nancy Carlisle, is a residential real estate broker with substantial experience.[5] She opined that on the petition date the house was worth about $549,000-$550,000. Ms. Carlisle testified that the Covid pandemic, low interest rates, and government spending programs created a unique seller's market in mid-2021.

Creditor's witness, Joshua Baca, is a certified appraiser. Mr. Baca has been in the appraisal industry for 22 years and owns his own appraisal company. Mr. Baca opined that that on the petition date the house was worth $515,000.

The Court found both experts credible. Their opinions are within 7% of one another. Splitting the difference would result in a value of $532,500, a reasonable figure. However, the Court is persuaded by Ms. Carlisle's testimony that, given the red-hot residential real estate market in Albuquerque in the summer of 2021, a somewhat higher value would be more accurate. If there is a weakness in Mr. Baca's appraisal, it is that he did not sufficiently adjust for the swiftly rising

---

[4] Iron Horse's judgment lien likely is avoidable as a preferential transfer. *See* § 547(b). However, the Court finds that neither Debtors nor the chapter 13 trustee is likely to bring a preference action to avoid the lien in its entirety, as doing so would render Debtors ineligible for chapter 13.

[5] In this district, real estate brokers are allowed to give expert testimony. *See In re Keenan*, 364 B.R. 786, 795 (Bankr. D.N.M. 2007), citing *Hickey v. Griggs*, 106 N.M. 27, 28-29 (S. Ct. 1987).

market when this case was filed. The Court concludes that on June 18, 2021, the fair market value of the house was $540,000.

2. Mortgage on the house. Wells Fargo has a $341,472 first mortgage on the house. Iron Horse's judgment lien is junior to the mortgage.

3. Homestead exemption. Debtors claim a $120,000 New Mexico homestead exemption on the house. N.M. Stat. Ann. § 42-10-9. When determining a chapter 13 debtor's noncontingent, liquidated, and unsecured debts, the debtor's homestead exemption reduces the amount of home equity available to a judgement lien holder. *See, e.g., In re Smith*, 435 B.R. 637 (9th Cir. BAP 2010):

> In ascertaining the extent to which the judgment lien, included in Schedule D rather than in Schedule F, was unsecured for § 109(e) purposes, *Scovis* considered not only the scheduled value of the property, the amount of the first trust deed and the amount of the judgment lien, but also the debtors' declared California homestead exemption. The *Scovis* court determined that, because the debtors had listed both the homestead exemption and the judgment lien on the schedules, the bankruptcy court was provided a "sufficient degree of certainty" to regard the entire judgment lien as unsecured for eligibility purposes.

435 B.R. at 646.

4. Iron's Horse's unsecured judgment lien claim. Subtracting the Wells Fargo mortgage and the homestead exemption from $540,000 yields an Iron Horse secured claim of $78,528. The balance of Iron Horse's judgment lien claim, $247,941.18, is a liquidated, noncontingent, unsecured claim. *See, e.g., In re Soderlund*, 236 B.R. 271, 273 (9th Cir. BAP 1999) (unsecured portion of undersecured claims should be included in § 109(e) calculations, citing cases from the 4th, 7th and 8th circuits).

D. Iron Horse's Other Claims.

Iron Horse filed four other claims, all unsecured:

Claim #        Amount        Basis of the claim

|    |             |                                              |
|----|-------------|----------------------------------------------|
| 10 | $71,767.67  | Loan to Debtors;                             |
| 11 | $93,166.42  | Alleged embezzlement on company credit card; |
| 12 | $43,176.25  | Alleged credit card fraud; and               |
| 28 | $11,600     | Alleged theft of equipment and property.     |

Debtors included these claims in their amended schedules, each marked as "contingent, unliquidated, and disputed." Three of the claims are the subject of a pending nondischargeability proceeding brought by Iron Horse. Iron Horse's motion to dismiss does not include the claims in its § 109(e) calculation, presumably because they are not "readily determinable." *Rottiers*, 450 B.R. at 215. The Court agrees; Iron Horse's disputed claims are not "fixed, certain, or otherwise determined by a specific standard." *Id.* Thus, the claims are not liquidated.

E.  <u>Mountain America Credit Union Claims</u>.

Mountain America Credit Union filed three proofs of claim. In one, it asserted a $50,423.36 claim secured by Debtors' 2018 Shasta Phoenix 5th Wheel (the "RV").[6] In another, Mountain America asserted a $34,650.49 claim secured by Debtors' 2018 GMC truck (the "Truck"). Finally, Mountain America filed a $14,791.63 claim for credit card debt, secured by a lien on the Truck. The security agreement for the Truck includes a broad cross-collateralization provision that includes the credit card debt.

Mr. Beach testified that the Truck is worth about $50,000-$51,000 and the RV is worth about $30,400. In their latest chapter 13 plan, Debtors propose to pay both vehicle loans in full, but not the credit card debt. As there is no equity to secure the credit card debt, the Court finds that it is unsecured.

---

[6] Iron Horse argued that the RV loan is unsecured because Mountain America did not attach proof of lien perfection, i.e., a copy of the vehicle title with the lien notated. This argument is overruled. First, just because the RV's vehicle title was not attached does not mean that it does not exist. Second, even if the lien is not perfected, it attached to the RV, so the loan is secured. Debtors do not propose to avoid Mountain America's lien on the RV.

F. Crowley and Gribble, P.C.

Clayton Crowley of Crowley & Gribble, P.C. was Mr. Beach's state court counsel in the litigation with Iron Horse. Debtors' schedule E/F lists a debt to Crowley & Gribble of $40,000.[7] Crowley & Gribble did not file a proof of claim, however. Further, Mr. Crowley testified at the final hearing that his firm usually writes off unpaid legal fees when a client files for bankruptcy, and that it would not seek to collect unpaid fees from Debtors. In light of this clear waiver, the Court holds that Crowley & Gribble's debt should be excluded from the eligibility calculation.

G. The IRS Claim.

Debtors did not file income tax returns for 2019 and 2020. Consequently, when the IRS filed its proof of claim it had to estimate Debtors' income tax liability for those years. The estimated taxes are part of the $15,603.31 priority portion of IRS' $50,274.85 total claim. While such estimated claims are arguably unliquidated,[8] Debtors do not dispute the amount. Rather, in their amended schedules Debtors listed the IRS' priority claim as $15,603.31. Similarly, Debtors' amended plan proposes to pay the IRS $15,603.31 as a priority claim. Because Debtors do not dispute the amount of the claim, the Court rules that it is liquidated for § 109(e) purposes.

H. The "Stale" Credit Card Claims.

The filed claims include three small credit card debts (totaling $6,204.10) that went into default in 2008 or 2009. As the statute of limitations in New Mexico for written contracts is six

---

[7] The proper amount of the claim on the petition date is $42,000, per the testimony of Mr. Crawley and Mr. Beach.

[8] *But see In re Hair*, 2012 WL 5939352 (Bankr. E.D.N.C.) (estimated IRS claim was liquidated even though debtor disputed it); and *Hounsom v. United States*, 325 B.R. 319, 326 (M.D. Fla. 2005) (IRS's proof of claim constitutes prima facie evidence of the validity of the amount of the claim even if later amended).

years, *see* N.M.S.A. § 37-1-3, the claims are stale. The Court holds that they should not count toward the eligibility cap.

I.  The Ashley furniture credit card claim.

Debtors listed credit card indebtedness to Ashley Homestore of $2,034, secured by furniture valued at $500. Ashley filed two proofs of claim totaling $3,117.03. Both claims were filed as unsecured. The Court concludes that the claims should be treated as unsecured for § 109(e) eligibility purposes.

J.  Celeste Dalida Claim.

Debtors borrowed $3,000 from their daughter, Celeste Dalida, to give to bankruptcy counsel as a retainer. In their amended schedules Debtors list the debt as unsecured. Ms. Dalida did not file a proof of claim. Apart from that, however, there is no evidence that Ms. Dalida waived her claim. The Court concludes that it is appropriate to include the $3,000 debt in the § 109(e) eligibility calculation.

J.  The Court's Finding of Liquidated, Noncontingent, Unsecured Claims.

The following table shows Debtors' noncontingent, liquidated unsecured debts based on Debtors' original schedules; filed claims; amended schedules; and the Court's conclusions about which debts should be included in the § 109(e) eligibility calculation.

| Creditor | Original Schedules (filed 7/9/21) | Claims Register (bar date 8/27/21) | Amended Schedules (filed 11/19/21) | Court Ruling |
|---|---|---|---|---|
| IRS | $48,000.00 | $50,274.85 | $50,603.31 | $50,274.85 |
| NMTRD | $800.00 | unknown | $800.00 | $800.00 |
| Capital One | $5,952.00 | $5,602.47 | $5,952.00 | $5,602.47 |
| Capital One | $3,848.00 | $3,848.71 | $3,848.00 | $3,848.71 |
| Celeste Dalida | $0.00 | $0.00 | $3,000.00 | $3,000.00 |
| Commenity | $999.00 | $1,000.43 | $999.00 | $1,000.43 |
| Credit One Bank | $1,975.00 | $1,975.36 | $1,975.00 | $1,975.36 |

| | | | | |
|---|---|---|---|---|
| Credit One Bank | $1,501.00 | $1,501.38 | $1,501.00 | $1,501.38 |
| Credit One Bank | $1,098.00 | $1,058.39 | $1,098.00 | $1,058.39 |
| Crowley & Gribble | $40,000.00 | $0.00 | $40,000.00 | $0.00 |
| JPMorgan Chase | $1,904.00 | $1,904.11 | $1,904.00 | $1,904.11 |
| JPMorgan Chase | $4,715.00 | $4,618.92 | $4,715.00 | $4,618.92 |
| JPMorgan Chase | $1,891.00 | $1,891.61 | $1,891.00 | $1,891.61 |
| Lending Club | $20,182.00 | $20,070.42 | $20,182.00 | $20,070.42 |
| Mountain America FCU | $15,089.00 | $0.00 | $0.00 | $14,791.63 |
| SYNCB/Amazon PLCC | $4,308.00 | $3,772.00 | $4,308.00 | $3,772.00 |
| SYNCB/PayPal | $2,880.00 | $2,467.63 | $2,880.00 | $2,467.63 |
| SYNCB/Sam's Club | $2,518.00 | $1,884.97 | $2,518.00 | $1,884.97 |
| Merrick Bank Corp. | $0.00 | $2,633.87 | $0.00 | $0.00 |
| Merrick Bank Corp. | $0.00 | $2,039.72 | $0.00 | $0.00 |
| CIGPF I Corp | $0.00 | $1,530.51 | $0.00 | $0.00 |
| LVNV Funding/Ashley | $0.00 | $1,686.06 | $0.00 | $1,686.06 |
| LVNV Funding/Ashley | $0.00 | $1,430.97 | $0.00 | $1,430.97 |
| | | | | |
| Subtotal | $157,660.00 | $111,192.38 | $148,174.31 | $123,579.91 |
| | | | | |
| House value | $538,000.00 | $538,000.00 | $538,000.00 | $540,000.00 |
| Wells Fargo mortgage | $340,699.00 | $341,472.51 | $340,699.00 | $341,472.51 |
| Homestead exemption | $120,000.00 | $120,000.00 | $120,000.00 | $120,000.00 |
| Iron Horse secured claim | $77,301.00 | $76,527.49 | $77,301.00 | $78,527.49 |
| Iron Horse unsecured lien claim | $247,699.00 | $249,941.69 | $247,699.00 | $247,941.69 |
| total unsecured | $405,359.00 | $361,134.07 | $395,873.31 | $371,521.60 |
| eligibility cap | $419,275.00 | $419,275.00 | $419,275.00 | $419,275.00 |
| Difference | $13,916.00 | $58,140.93 | $23,401.69 | $47,753.40 |

The table shows that the Debtors are eligible for chapter 13 relief based on their bankruptcy schedules, the filed claims, their amended schedules, or the Court's conclusions after weighing the evidence. Further, even if the Crowley & Gribble $42,000 debt is included in the Court's eligibility calculation, Debtors would still be eligible for chapter 13 relief.

## CONCLUSION

The outcome of Iron Horse's motion to dismiss hinges on the petition date value of Debtor's house. The Court finds a $540,000 value because of the extraordinary market conditions prevailing on the petition date. Based on that valuation, the Debtors were eligible to file a chapter 13 bankruptcy case.

Iron Horse's motion to dismiss will be denied by a separate order.

_____
Hon David T. Thuma
United States Bankruptcy Judge

Entered: February 7, 2022
Copies to: electronic notice recipients