UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JODY LEE BEACH and
RHONDA B. BEACH,                                          Case no. 21-10762-t13

    Debtors.

**OPINION**

    Before the Court is Iron Horse Welding, LLC's request that the Court reconsider its denial of Iron Horse' motion to dismiss this bankruptcy case. In the motion to dismiss, Iron Horse argued that Debtors had too much unsecured debt to file a chapter 13 case. The Court denied the motion, finding that Debtors were within the unsecured debt limit. Now, nearly ten months later, Iron Horse asks that the Court reconsider its ruling.

A.    Facts.

    For the purpose of ruling on the motion to reconsider, the Court incorporates by reference its findings in (i) the opinion entered in this case on February 7, 2022, doc. 88; (ii) the opinion entered in this case on November 8, 2022, doc. 143; and (iii) the opinion entered in adv. proc. 21-1028 on October 21, 2022, doc. 73.[1] Capitalized terms not otherwise defined in this opinion have the meanings ascribed to them in the other opinions. In addition, the Court finds:[2]

    Debtors worked for Iron Horse from April 2010 to August 2019. During most of that time, Debtors and Iron Horse's owner, Allen Grisham, were good friends. The relationship soured badly.

---

[1] The Court takes judicial notice of its docket in this case and the dockets of Iron Horse's state court actions against Mr. Beach. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Some findings of fact are in the discussion section.

Shortly after Debtors quit their Iron Horse jobs in August 2019, Iron Horse brought two state court actions against Mr. Beach. One of the lawsuits resulted in a May 18, 2021, judgment against Mr. Beach for $325,000 ($175,000 in actual damages and $150,000 in punitive damages).[3] Iron Horse filed a transcript of judgment on June 15, 2021, creating a judgment lien on Debtors' house. The other lawsuit sought to collect an alleged loan made by Iron Horse to Debtors. Debtors denied liability. The collection action was tried in late 2020 and early 2021, after which the state court took the matter under advisement.

Jody and Rhonda Beach filed this chapter 13 case on June 18, 2021. Iron Horse is Debtors' largest creditor.

Debtors filed bankruptcy schedules on July 9, 2021. Schedule E/F listed liquidated, noncontingent unsecured claims of $157,660. Schedule D listed Iron Horse as a secured creditor with a $325,000 judgment lien on Debtors' house. Debtors valued the house at $538,000. Schedule D also listed Wells Fargo as a secured creditor with a $340,699 first mortgage on the house. In schedule C, Debtors claimed a $120,000 homestead exemption in the house. Subtracting the Wells Fargo mortgage and the homestead exemption from $538,000 results in a $77,301 secured claim and a $247,699 unsecured claim for Iron Horse. Thus, Debtor's schedules reflected total noncontingent, liquidated, unsecured debts of $405,359.

Debtors also listed on schedule E/F a disputed, contingent, unliquidated debt to Iron Horse of $71,556. This debt is the subject of Iron Horse's state court collection action.

Iron Horse filed claim #10 on July 28, 2021. The asserted amount was $71,767, the amount sought in the collection action. The basis for the claim is "money loaned." Attached to the claim

---

[3] Mr. Beach filed a motion to reconsider the judgment, arguing, inter alia, that Iron Horse had not requested punitive damages. Litigation of that motion is stayed by the automatic stay.

are three checks, totaling $64,150. Two of the checks are payable to Stewart Title ($4,150 and $40,821.28). The third is payable to Mr. Grisham ($19,178.72). No loan agreement, promissory note, or payment history is attached. In lieu of these documents, Iron Horse stated:

> In the Summer 2014, IRON HORSE WELDING loaned the Debtors $64,150 to purchase their house that they are living at this time [sic]. Iron Horse also loaned the Debtors $19,178.72 for "home fix-up." Iron Horse's 3 checks evidencing the loan are attached hereto as follows:
> July 2014     Stewart Title "good faith deposit"            $4,150
> August 2014  Stewart Title, down payment and closing costs  $40,821.28
> August 2014  Advance to pass through acct for "home-fix up" $19,178.72
> Total Loan                                                  $64,150
>
> The Debtors were making payments to Iron House [sic] until they both quit their employment with Iron Horse in August 2019, at which time the unpaid balance was $62,002.31 plus 8.75% from September 1, 2019. (Note, the Debtors did not make all of their monthly payments). The interest from September 1, 2019 through June 18, 2021 is $9,765.36.
> The total amount of this claim is $71,767.67.

On October 29, 2021, Iron Horse moved to dismiss this case, arguing that Debtors unsecured debt exceeded the $419,275 cap in 11 U.S.C. § 109(e)[4] at the time. According to Iron Horse's calculations, Debtors' liquidated, noncontingent, unsecured debts totaled $430,102.88, about $14,000 over the cap.

Debtors filed amended schedules on November 19, 2021. The amended schedules reflected noncontingent, liquidated secured claims of $148,174.31. Adding Iron Horse's $247,699 judgment lien deficiency claim results in noncontingent, liquidated unsecured claims of $395,873.31. Debtors scheduled all of Iron Horse's unsecured claims as disputed, contingent, and unliquidated.

The Court held a final hearing on the motion to dismiss on December 20, 2021. Clay Crowley was one of the witnesses, testifying on behalf of Crowley & Gribble, a law firm listed on schedule E/F as being owed $40,000. Mr. Crowley testified that his firm never seeks to collect

---

[4] Unless stated otherwise, all statutory references are to 11 U.S.C.

unpaid bills when clients file bankruptcy, and that the policy applied with particular force in this case.

B.     The Order Denying the Motion to Dismiss is Interlocutory and Can be Reconsidered.

The Court's order denying Iron Horse's motion to dismiss was interlocutory. *See, e.g., Dababneh v. Fed. Deposit Ins. Corp.,* 971 F.2d 428, 432 n.6 (10th Cir. 1992) ("a ruling denying a motion to dismiss is interlocutory"); *John E. Burns Drilling Co. v. Cent. Bank of Denver,* 739 F.2d 1489, 1492 (10th Cir. 1984) ("The denial of a motion to dismiss, even when the motion is based on jurisdictional grounds, ... is interlocutory.") (internal citations omitted).

Under Rule 54(b),[5] an order adjudicating fewer than all claims of all parties "may be reviewed at any time before entry of a judgment . . ." The rule applies to reconsideration of interlocutory orders. *See, e.g., C & A Const. Co. v. DHC Dev.*, 501 Fed. App'x 763, 779 (10th Cir. 2012) (applying Rule 54(b) to the district court's interlocutory order); *Raytheon Constructors, Inc. v. ASARCO, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003) (Rule 54, not Rule 60, provides the basis for reconsidering an interlocutory order); *Trujillo v. Board of Educ. of Albuquerque Public Schools*, 212 Fed. App'x 760, 765 (10th Cir. 2007) (unpublished) (same). "[I]nterlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final adjudication." *Filebark v. United States Dept. of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009), *cert. denied*, 558 U.S. 1007 (2009) (quoting *Langevine v. District of Columbia,* 106 F.3d 1018, 1023 (D.C. Cir. 1997)). "District courts generally remain free to reconsider their earlier interlocutory orders." *Naylor Farms, Inc. v. Anadarko OGC Co.,* 2011 WL 7053794, at *1 (W.D. Okla. 2011) (citing *Rimbert v. Eli Lilly and Co.,* 647 F.3d 1247, 1[2]51

---

[5] A "Rule" refers to the Federal Rules of Civil Procedure, while a "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

(10th Cir. 2011)). The Court may reconsider its interlocutory order denying Iron Horse's motion to dismiss.

C. The Standard for Reviewing Interlocutory Orders.

Tenth Circuit courts may rely on their general discretionary authority to reconsider interlocutory orders, as justice requires. *See, e.g., Friedman v. Dollar Thrifty Automotive Group, Inc.,* 2015 WL 8479746, at*2 (D. Colo. 2015) ("In deciding a motion to reconsider an interlocutory order, the court is not bound by the stricter standards for considering a Rule 59(e) or 60(b) motion. . . . Instead, a court has plenary power to revisit and amend interlocutory orders as justice requires."); *Trujillo v. Board of Educ. of the Albuquerque Public Schools*, 470 F. Supp. 2d 1270, 1275 (D.N.M. 2005), *aff'd and remanded*, 212 Fed. App'x 760 (10th Cir. 2007) (applying the discretionary standard and determining that it was in the interests of justice to grant a motion to reconsider in part); *Dombos v. Janecka,* 2012 WL 1372258, at *3 (D.N.M. 2012) ("Notably, neither rule 59 nor rule 60 apply to interlocutory orders a district court reconsiders before entry of final judgment."); *In re Saavedra*, 2022 WL 1051092, at **3-4 (Bankr. D.N.M.) (same, citing *Friedman* and *Trujillo*); *see generally* Rule 60, Advisory Committee Notes for 1946 Amendment to Subdivision (b) (fifth paragraph) ("[I]nterlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires").

D. Claim # 10 is Unliquidated.

The motion to reconsider is based primarily on Iron Horse's claim #10. Iron Horse argues the claim represents a debt that was liquidated on the petition date. In its original ruling, the Court held to the contrary. Iron Horse argues:

> [T]he debt represented by Claim #10 was debt due under a loan and was not subject to any pending adversary proceeding. The debt owed under Claim #10 was readily
-5-

and precisely determinable; further, at the time of the Order on MTD, it was clear that the claim would be allowed.

. . .

Debtors knew what they still owed in September 2019, when they stopped making payments on the loan, and could have easily ascertained the interest thereon. IHW had then filed suit against the Debtors in State Court to collect the loan debt, the parties had litigated the entire case, and a bench trial had already been completed. The amount of Claim #10 ($71,767.67) was readily ascertainable from the filings in Case No. D-202-CV-2019-07107 (Second Judicial District Court, NM). In that matter, IHW, the Plaintiff, went so far as to amend the sought amount to align with the available evidence, filing an affidavit reflecting the same amounts shown in Iron Horse's relevant Notice of Claim. *See* Amended Affidavit of Allen Grisham Correction to Deposition Testimony and Answers to Interrogatories, filed October 30, 2020 in Case No. D-202-CV-2019-07107 (the "Amended Affidavit"), attached hereto as Exhibit A; *see also* Claim #10 herein. In both the Amended Affidavit and the Notice of Claim, Iron Horse provided the exact amounts owed and bolstered its claim by attaching copies of the checks paid. *Id.* Indeed, the final filing made by IHW in the District Court case again reflected this amount.

Despite Iron Horse's argument, the debt evidenced by claim #10 was not liquidated on the petition date. "[C]ourts uniformly agree that a debt is 'liquidated' for § 109(e) purposes when the amount of the debt is determinable based on a simple mathematical computation or is readily ascertainable by reference to an agreement." *In re Sofio*, 644 B.R. 875, 882 (Bankr. D.N.M. 2022), citing, inter alia, *In re Adams*, 373 B.R. 116, 120 (10th Cir. BAP 2007). Similarly, in *In re Rottiers*, 450 B.R. 208, 215 (Bankr. D.N.M. 2011), the court held:

> A debt is liquidated if "the amount of the debt is readily determinable." *In re Slack*, 187 F.3d 1070, 1073 (9th Cir.1999). Ready determination depends on "whether the amount due is fixed or certain or otherwise ascertainable by reference to an agreement or by a computation." *In re Nicholes*, 184 B.R. 82, 89 (9th Cir. BAP 1995). "Whether a debt is subject to 'ready determination' depends on whether the amount is easily calculable or whether an extensive hearing is needed to determine the amount of the debt." *In re Ho*, 274 B.R. 867, 873 (9th Cir. BAP 2002).
>
> *See also In re Knight*, 55 F.3d 231, 235 (7th Cir. 1995) ("[T]he cases uniformly provide the method for determining whether a debt is liquidated: If the amount of a claim has been ascertained or can readily be calculated, it is liquidated.") (Citation and internal punctuation omitted.).

"[I]f the value of the claim depends upon extensive hearings or the future discretion of a trier of fact, it is likely that the value will not be easily ascertained and is thus unliquidated." *In re Pantazelos*, 540 B.R. 347, 352 (Bankr. N.D. Ill. 2015) (breach of fiduciary claim was unliquidated); *see also In re Sugg*, 2014 WL 3671421, *2 (Bankr. D. Or.) (a claim for breach of fiduciary duty against the debtors was not readily determinable absent an extensive hearing or trial and was therefore not liquidated); *In re Ho,* 274 B.R. 867, 873 (9th Cir. BAP 2002) ("Whether a debt is subject to 'ready determination' depends on whether an extensive hearing is needed to determine the amount of the debt."); *In re Reader*, 274 B.R. 893, 896 (Bankr. D. Colo. 2002) ("Whether a debt is liquidated turns on whether it is subject to 'ready determination and precision in computation of the amount due.'"); *United States v. Verdunn (In re Verdunn),* 89 F.3d 799, 802 (11th Cir.1996) ("A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law.").

Here, Claim #10 cannot be ascertained based on a simple mathematical computation, nor is the claim amount readily ascertainable by reference to an agreement. The claim is for "Money loaned." Attached to the claim are three checks, totaling $64,150. None of the checks is payable to Debtors. On what basis are Debtors liable to Iron Horse for the $64,150? They may be, but nothing in writing says so. Was it an oral agreement? Debtors deny that they ever agreed to pay $64,150 to Iron Horse.

Was an interest rate agreed upon? There is nothing in writing. Iron Horse calculates interest at 8.75% from September 1, 2019. Where did that interest rate and date come from? If it is prejudgment interest under NMSA § 56-8-4, then it is only due if awarded by the state court judge in its discretion. NMSA § 56-8-4-(B). The state court had not ruled by the time Debtors filed this case, so did not award prejudgment interest.

Apart from the interest component of the claim, which clearly is unliquidated, what about the alleged unpaid principal? Iron Horse asserts in the attachment to the claim that the unpaid principal balance is $62,002.31. How was that figure calculated? Does Iron Horse contend that Debtors paid $2,147.69 on the loan in five years? Iron Horse alleges that the parties agreed to repayment terms and that Debtors made payments until they quit working at Iron Horse. There is no written evidence of any repayment terms, nor is there any evidence of what payments, if any, Debtors made.

Liquidated debts include debts on simple contracts (e.g., for the sale of goods or services) or to collect promissory notes backed by complete, businesslike payment histories. On the other end of the spectrum, personal injury claims are a good example of unliquidated debts—the damages are only quantifiable by a jury or judge, after a trial. Iron Horse's claim #10 is decidedly on the unliquidated end of the spectrum. Because of Iron Horse's stubborn refusal to reduce agreements to writing[6] or operate in a businesslike manner, the alleged loan and its alleged repayment terms are disputed and shrouded in mystery. It took a multi-day trial to attempt to prove liability and/or damages.

Iron Horse's argument that the debt is "readily ascertainable" reminds the Court of a scene from *Guys and Dolls*:

> Big Jule: I'm rolling a thousand. And to change my luck I will use my own dice.
> Nathan: Your own dice!
> Big Jule: I had them made for me especially in Chicago.
> . . .
> Nathan: Not that I wish to seem petty, but could I look at these dice? . . . But these—these dice ain't got no spots on 'em. They're blank.

---

[6] The Court does not know whether the statute of frauds was pled as a defense in the state court collection action. *See* NMSA § 38-1-3. This dispute is a good example of why the statute of frauds is still part of New Mexico's common law. A written agreement, signed by the parties, would have been immensely helpful.

> Big Jule: I had the spots taken off for luck. But I remember where the spots formerly were.[7]

Like Big Jule, Iron Horse remembers where the spots were: it is convinced it knows exactly what Debtors owe, despite the absence of a note, contract, draw/payment history, or interest calculation. The Court does not share Iron Horse's confidence. All of the evidence before the Court indicates that the debt represented by claim #10 is *not* readily ascertainable and thus is unliquidated.

Iron Horse also makes much of the fact that Debtors did not object to claim #10, thus rendering it, so Iron Horse argues, liquidated. As Iron Horse admits elsewhere, however, postpetition events are not considered when determining § 109(e) eligibility. *See, e.g., In re Slack*, 187 F.3d 1070, 1073 (9th Cir. 1999) (§ 109(e) clearly states that the amount of the debt is determined as of the petition date); *In re Pearson*, 773 F.2d 751, 758 (6th Cir. 1985) ("[T]he fact that some later resolution of the conflict might render more certain the precise nature of the debt itself ... is relatively immaterial in determining the debtors' financial condition and Chapter 13 eligibility on the date the petition is filed."); *In re Ibbott,* 637 B.R. 567, 576 (Bankr. D. Md. 2022) (same); *In re West*, 2017 WL 746250, at *16 (Bankr. W.D. Mo.) (same); *In re Wiencko*, 275 B.R. 772, 777 (Bankr. W.D. Va. 2002) (same); *In re Harwood*, 519 B.R. 535, 539–40 (Bankr. N.D. Cal. 2014) (same).

Even if the postpetition events could be considered, the result would not change. Debtors testified that they decided not to object to claim #10 to save time and legal expense, not because they agreed with the claim's amount or validity. Under their confirmed chapter 13 plan, treating the claim as allowed will not adversely affect Debtors—they will pay the same amount regardless. Furthermore, Iron Horse is by far the largest unsecured creditor, so the dilution of the claims pool

---

[7] *Guys and Dolls*, Act II, Scene iii.

will primarily affect Iron Horse. It would not be right to use Debtors' sensible efforts to contain costs as the basis for denying them chapter 13 relief.

The Court concludes that claim #10 was unliquidated on the petition date.

E.  The Crowley & Gribble Claim.

Next, Iron Horse asks the Court to reconsider its decision to exclude the waived Crowley & Gribble debt from the § 109(e) calculation. In support of its argument, Iron Horse cites *In re Harwood* and another case for the proposition, discussed above, that post-petition events have no bearing on eligibility under § 109(e). Iron Horse argues that if Crowley & Gribble waived its claim against Debtors, it did so postpetition, which does not count for § 109(e) eligibility purposes.

There are three reasons why Iron Horse's argument fails. First, while Iron Horse is correct that post-petition events should not be considered, it was appropriate for the Court to take evidence about the eligibility issue. In some circuits, § 109(e) eligibility is determined by reviewing the debtor's bankruptcy schedules, "checking only to see if the schedules were made in good faith." *In re Scovis*, 249 F.3d 975, 982 (9th Cir. 2001). Under this test, Debtors are eligible under § 109(e) because their schedules were carefully prepared, filed in good faith, and demonstrate eligibility.

The law in the 10th Circuit is different, however. In *In re Murphy*, 146 Fed. App'x 285 (10th Cir. 2005), the Tenth Circuit held:

> [A]fter Murphy filed his petition, both the Trustee and the McArthurs made good faith objections to Murphy's Chapter 13 eligibility. At that point, it was proper for the bankruptcy court to look past the characterization of Murphy's claims in his schedules and consider other evidence.

146 Fed. App'x at 289. Following *Murphy*, after Iron Horse filed the motion to dismiss, the Court took evidence to determine Debtors' eligibility for chapter 13. Among other evidence, Mr. Crowley, a partner of the Crowley & Gribble law firm, testified about the Crowley & Gribble debt. Mr. Crowley testified that that the general policy of his firm is to not collect from clients once they

-10-
Case 21-10762-t13    Doc 170    Filed 01/13/23    Entered 01/13/23 14:38:17 Page 10 of 12

file bankruptcy. Mr. Crowley further testified that the firm's policy applied with particular force in this case, for the reasons he gave during his direct examination. Mr. Crowley's testimony was emotional and persuasive. It was not challenged by Iron Horse. The Court construed Mr. Crowley's testimony as an admission that when Debtors filed this case, their prepetition debt to Crowley & Gribble was extinguished. The Court therefore deemed it appropriate to exclude the debt from the § 109(e) calculation. The Court's conclusion about this has not changed.

Second, it makes no difference whether the Crowley & Gribble claim is included or excluded in the § 109(e) calculation. Rather, eligibility hinges on two, and only two, issues: the value of Debtors' house and whether Iron Horse's claim #10 is liquidated. The Court found that the house was worth $540,000.[8] That left Iron Horse with an unsecured deficiency claim of $247,941. The Court next ruled that claim #10 was unliquidated. Those rulings meant that Debtors were eligible for chapter 13, whether or not the Crowley & Gribble claim is counted.

Finally, the eligibility fight is academic at this point. After Debtors filed this case, Congress changed the eligibility requirements for chapter 13. Now, all individuals with regular income who owe less than $2,750,000 in noncontingent, liquidated debts (both secured and unsecured) are eligible.[9] If this case were dismissed on eligibility grounds, Debtors could simply refile and would be more than $1,750,000 under the new debt ceiling. Nothing would be accomplished except a waste of time and attorney fees. Debtors have argued that Iron Horse is "running up the fees" in this case to punish them. Iron Horse's continued fight about eligibility is consistent with that view.

---

[8] Debtors pointed out in their papers that, when disputing eligibility, Iron Horse argued that Debtors had overvalued their house, while when objecting to plan confirmation, Iron Horse argued that Debtors had undervalued the house.

[9] *See* the current version of § 109(e), effective June 21, 2022.

## CONCLUSION

For these reasons, and in reliance on its general discretionary authority, the Court will deny by separate order Iron Horse's renewed motion to dismiss this chapter 13 case on eligibility grounds.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 13, 2023
Copies to: counsel of record