UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:                                                    Case No. 21-10762-t13

JODY LEE BEACH and
RHONDA B. BEACH,

      Debtors.

**OPINION**

      Before the Court is a creditor's amended motion to reconsider confirmation of the Debtors' chapter 13 plan. The amended motion, which incorporates an earlier motion to reconsider, makes several arguments for reconsideration. The Court has considered them all and finds no merit in any. The Court therefore will deny the amended motion.

A.    Facts.[1]

      To rule on the motion for reconsideration, the Court incorporates by reference its findings in the opinions entered in this case on February 7, 2022; November 8, 2022; and January 13, 2023; as well as the opinion entered in Adv. Proc. 21-1028 on October 21, 2022. The Court further finds:[2]

      Jody and Rhonda Beach filed this chapter 13 case on June 18, 2021. On June 28, 2022, Debtors filed their Third Amended Chapter 13 Plan (the "Plan"). Tiffany M. Cornejo, the chapter 13 trustee, objected to confirmation of the Plan. Iron Horse Welding, LLC, the largest creditor and a tenacious litigant in this case, also objected to confirmation, arguing:

- The plan was filed in bad faith;
- The proposal to pay Iron Horse's secured claim directly is improper;
- Debtors should not be allowed to keep their pickup truck;

---

[1] The Court takes judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

- Debtors should not be allowed to keep their motorcycle;
- Debtors should not be allowed to keep their 5th wheel trailer;
- The motorcycle is undervalued;
- Debtors should increase their plan payments after the truck is paid off;
- The proposed interest rate on Iron Horse's secured claim (4%) is too low;
- Debtors should be required to pay all net bonuses into the plan;
- Debtors' monthly life insurance premium payment of $413.62 is too high;
- Debtors' deduction of $230 in additional home energy costs is excessive;
- Debtors' $44 deduction for additional food and clothing expense is excessive; and
- Debtors' $200 deduction to "catch up on 401k" is excessive.

On September 16, 2022, the Court held a two-day trial on the merits of a nondischargeability adversary proceeding Iron Horse brought against Debtors, followed by an evidentiary hearing on confirmation of the Plan. Before the trial, Debtors and the Trustee settled the Trustee's objections to confirmation of the Plan. Because of the settlement, the Trustee neither appeared nor presented evidence at the confirmation hearing. The terms of the settlement were reflected in Chapter 13 Plan Summary Report (the "Summary Report") introduced into evidence by Debtors, and by Debtors' testimony.

On direct examination, the Debtors testified that under the terms of the settlement with the Trustee, they agreed to contribute 100% their net bonus income and all tax refunds into the Plan. They also testified that at the end of the Plan, they would pay an extra amount sufficient to satisfy the Trustee's confirmation objections.

Iron Horse's argument and evidence at the confirmation hearing did not correlate to its objection. Rather, Iron Horse limited its argument to the reasonable necessity of the following monthly expenses on Debtors' amended schedule J:

- Debtors' utility expenses of $523;
- The $35 car wash expense;
- The $150 expense for clothing, laundry, and dry cleaning;
- The $1,000 expense for food;
- The life insurance expense of $317;
- The $645.84 expense for 401k contributions;

- The cell phone expense;
- The $444 payment on the 5th wheel loan; and
- The $816 payment on the truck loan.

On November 8, 2022, the Court overruled Iron Horse's objections to confirmation of the Plan, except for a deduction to debtor's disposable income for life insurance.[3] The Court ordered (the "Interim Order") the Trustee to submit a confirmation order consistent with the Court's opinion and that reflected her settlement with the Debtors.

Iron Horse filed a motion to reconsider on November 22, 2022. On December 7, 2022, the Court entered the form of confirmation order submitted by the Trustee (the "Confirmation Order").

Iron Horse filed an amended motion to reconsider the opinion and Interim Order on December 21, 2022, which, inter alia, incorporated by reference the arguments made in the first motion. Iron Horse argues that the following are instances of clear error:

1. The Court should have required that the Confirmation Order provide for the payment of an additional $67,543 and include the other settlement terms;
2. The Trustee objected to calculation of Debtor' current monthly income, and the Court did not address the objection;
3. The Court ignored Iron Horse's objection about Debtors' bonuses;
4. Iron Horse was placed at a disadvantage because it did not receive advance notice of the settlement with the Trustee;
5. The provision in the Confirmation Order allowing Debtors to ask that a part of future bonuses be available to pay reasonable expenses is at odds with the Court's statement that a creditor could file a motion to modify the Plan to increase payments when Debtors pay off their truck;
6. There is nothing in the Confirmation Order about Iron Horse being paid through the Plan;
7. A feasibility assessment should be conducted by the Court. The Plan should not have been confirmed because Debtors' ability to make the $22,000 payment is speculative; and
8. The Confirmation Order should not have been entered pending resolution of the motion to reconsider.

---

[3] The Court did its best to convert Iron Horse's schedule J arguments into arguments that Debtors had not properly completed their Form 122C. In doing so, the Court concluded that Debtors' life insurance expense was excessive.

B.  <u>The Interim Order Merged into the Confirmation Order, Which is a Final Order</u>.

An order confirming a chapter 13 plan is a final order. *See, e.g., Bullard v. Blue Hills Bank*, 575 U.S. 496, 502-03 (2015) (the proceeding is final only when the plan is confirmed or the case is dismissed). The Confirmation Order is final and appealable.

The Interim Order, which neither confirmed the Plan nor dismissed the case, was interlocutory. Tenth Circuit courts may rely on their general discretionary authority to reconsider interlocutory orders, as justice requires. *See In re Beach,* 2023 WL 187153 at *3 (Bankr. D. N.M.) (collecting authority). But, under Rule[4] 54(b), incorporated herein by Bankruptcy Rule 7054, interlocutory orders may only be revised, "before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

Once a final judgment is entered, "any interlocutory orders and rulings that produced the final judgment merge into the final judgment." *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233, n.7 (10th Cir. 2022), citing *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) (an appeal from a final judgment permits the appellate court to examine all prior orders that helped bring about the final judgment). The Interim Order therefore merged into the Confirmation Order.

C.  <u>Standard for Altering or Amending a Final Judgment – Rule 59(e)</u>.

Rule 59(e) provides:

(e)  Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

Rule 59(e) applies to contested matters governed by the Bankruptcy Code and Rules, except that the deadline to file a motion is 14 days rather than 28 days. *See* Bankruptcy Rule 9023.

---

[4] All references to a "Rule" are to the Federal Rules of Civil Procedure, while all references to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

> Rule 59(e) permits a party to request reconsideration of a final judgment. [Rule 59(e)]. . . . "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." . . . A motion to alter or amend a judgment should be granted only "'to correct manifest errors of law or to present newly discovered evidence.'" . . . "Neither a Rule 59(a) nor a Rule 59(e) motion is the appropriate avenue to revisit issues already considered or to argue matters not raised in prior briefs." . . . .

*Retiree, Inc. v. Anspach*, 95 F. Supp. 3d 1303, 1307-08 (D. Kan. 2015) (citations omitted), reversed in part on other grounds, 660 Fed. App'x 582 (10th Cir. 2016).

> Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to [Rules 59] are to be granted "sparingly," *Maldonado v. Lucca,* 636 F. Supp. 621 (D.N.J. 1986), and only when "dispositive factual matters or controlling decisions of law" were brought to the court's attention, but not considered. *Pelham v. United States,* 661 F. Supp. 1063, 1065 (D.N.J. 1987).

*Gutierrez v. Ashcroft*, 289 F. Supp. 2d 555, 561 (D.N.J. 2003), aff'd on other grounds sub nom, 125 F. App'x 406 (3d Cir. 2005).

In the Tenth Circuit and elsewhere, grounds for relief under Rule 59(e) are: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000), citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

If a "motion to reconsider" is filed within 14 days after a judgment is entered, most courts treat it as a Rule 59(e) motion. *See, e.g., In re McCaull*, 494 B.R. 81, at *2 (10th Cir. BAP 2009) (unpublished) (construing debtor's motion to reconsider, filed nine days after the order in question was entered, as a Rule 59(e) motion); *Buchanan v. Sherrill*, 51 F.3d 227, 230 n.2 (10th Cir. 1995)

("we construe a post-judgment motion filed within [14] days challenging the correctness of the judgment as a motion under Rule 59(e).").

Iron Horse filed the motion to reconsider 14 days after entry of the Interim Order and the amended motion 14 days after entry of the Confirmation Order. The Court will treat the amended motion as a Rule 59(e) motion to alter a final judgment.[5]

Iron Horse does not allege an intervening change of law or newly discovered evidence. Therefore, the Court will only alter or amend its rulings to correct clear error or prevent manifest injustice.

D.  <u>First Argument: The Court should have required that the Confirmation Order provide for the payment of an additional $67,543 and include the other settlement terms</u>.

Iron Horse argues that the Court erred when if failed to order the Trustee to include specific settlement terms in the confirmation order:

> [T]he Court states that the additional payments into the plan of $67,543.00 'is a key settlement term.' The Court proceeds to make presumptions about the other terms of the settlement based upon that number and the limited information in the Report. The Order, however, simply directs the Chapter 13 Trustee to submit to the Court, for entry, an order confirming the plan, reflecting her settlement with the Debtors and the adjustment of Debtor's insurance expense. . . . there is no requirement that the Order specifically provide for the total amount to be paid into the Plan by Debtors or require the inclusion of any of the other terms presumed by the Court (such as reduction from Debtors' expenses $290/month for disallowed cell phone and additional home energy costs). Therefore, in the event the settlement terms are not as presumed by the Court, a whole different plan could be confirmed than what was contemplated.

The problem with this argument is that the Confirmation Order reflects every aspect of the Trustee's settlement, including the additional plan payments. In fact, the Confirmation Order

---

[5] Because of this, the Court will not discuss Rule 60(b).

-6-
Case 21-10762-t13   Doc 179   Filed 03/10/23   Entered 03/10/23 10:23:22 Page 6 of 13

increases the total plan payments by at least $68,192[6] and requires Debtor to pay the Trustee net bonuses and tax refunds. The order therefore accords with or exceeds the settlement terms reflected in the Summary Report, Debtors' testimony, and the representations of Debtors' counsel.

In any event, the crucial question for the Court was not how closely the Confirmation Order reflected the Trustee's settlement, but whether the Plan as modified by the Confirmation Order complied with § 1325. It did. This argument is overruled.

E.     <u>Second Argument: The Trustee objected to calculation of Debtors' projected disposable income, and the Court did not address the objection</u>.

Iron Horse argues:

> The Court provided, in its Opinion, that although Mrs. Beach's income had increased by approximately $1,200 per month (per Debtors' Amended Schedule I), it would not address the issue of adjusting Debtors' disposable income upwards based on the change, because it did not "draw an objection from the Trustee or Iron Horse" . . . But that is not the case. The Trustee specifically objected to calculation of Debtors' CMI without having changed their income to reflect Mrs. Beach's increase . . .

This argument, based on a misreading of the Court's opinion, is overruled. The Court opined that there were two matters potentially relevant to Debtor's projected disposable income, neither of which drew an objection from Iron Horse or the Trustee. One of the matters was that "Debtors' amended schedule I reflects Rhonda's higher monthly salary from a new job (an increase of $1,200, from $4,425.53 to $5,625). The higher monthly salary was not reflected in Debtors amended Form 122C-1." Debtors should have filed an amended Form 122C-1 to reflect the increase, and the Court pointed out that the omission was not objected to by the Trustee or Iron

---

[6] The Plan proposed monthly payments totaling $166,095, plus a one-time payment of $11,269.06 in month 14, for a grand total of $177,364.06. Under the Confirmation Order, monthly payments total $204,675 while additional payments total $40,881.06, for a grand total of $245,556.06. The difference is $68,192.

Horse. The matter was mooted, however, by the Trustee's settlement with Debtors, which took into account Ms. Beach's salary increase.

Indeed, it is fair to say that both the Trustee's objection to the Plan and Iron Horse's hearing evidence focused primarily on the proper calculation of Debtors' projected disposable income. If one single issue was litigated and determined, it was that. Calculation of projected disposable income is not a simple, mathematical exercise; there is much room to argue about the proper income and expense figures. The Court found that the figures agreed to by the Trustee and Debtors accurately represented Debtors' proposed disposable income, such the Plan as amended complied with § 1325. Iron Horse's weak argument that the Court failed to consider the proposed disposable income issue is overruled.

F.    Third Argument: The Court Ignored Iron Horse's Objection About Debtors' bonuses.

Iron Horse argues that the Court ignored its objection that the Plan did not require Debtors to pay their bonuses into the Plan. That is incorrect. Both the Trustee and Iron Horse objected to the Plan on that basis. As part of their settlement with the Trustee, Debtors agreed to pay their bonuses into the Plan. The Confirmation Order provides in part:

> Debtor Jody Beach has received historical annual bonuses from employment. Prior to settlement with the trustee, Debtor paid 50% of his 2022 annual gross bonus in the amount of $11,269.06. This amount will not be revisited, however, starting with any bonuses going forward and during the remaining life of the plan, Debtors commit to pay one-hundred percent (100%) of any net bonus income to the trustee to be distributed under the plan.

This concession by Debtors resolved the objections of the Trustee and Iron Horse related to Debtors' bonuses.[7] For that reason, the Court overrules the argument.

---

[7] Iron Horse may argue that the Trustee should have received 100% of the 2022 bonus, not 50%. That is not correct. Under *Hamilton v. Lanning*, 560 U.S. 505 (2010), the bonuses are projected disposable income only if they are "virtually certain" to be paid. *Id.* at 524. Otherwise, the Trustee

-8-
Case 21-10762-t13    Doc 179    Filed 03/10/23    Entered 03/10/23 10:23:22 Page 8 of 13

G.      <u>Fourth Argument: Iron Horse was Placed at a Disadvantage Because it did not Receive Advance Notice of the Settlement with the Trustee.</u>

Iron Horse argues it was disadvantaged because it did not know the terms of the Trustee's settlement and was not given the opportunity to review and approve the Confirmation Order. The Court overrules the argument. The terms of the settlement *were* shared with Iron Horse, by way of representations made by Debtors' counsel, the Summary Report, and Debtors' testimony. There was substantial testimony and discussion at the confirmation hearing about the settlement terms. Iron Horse had ample opportunity to ask questions of Debtors and their counsel about the terms. Had Iron Horse asked to examine the Trustee, the Court would have allowed it. No such request was made.[8]

H.      <u>Fifth Argument: The Provision in the Confirmation Order Allowing Debtors to ask That a Part of Future Bonuses be Available to Pay Reasonable Expenses is at Odds With the Court's Statement That a Creditor Could File a Motion to Modify the Plan to Increase Payments When Debtors Pay Off Their Truck.</u>

Iron Horse argues that allowing the Debtors to request payment of less than 100% of their bonus income to pay reasonable expenses in the future is "at odds" with the Court's ruling that a creditor could request a plan payment increase upon payoff of secured debt. The argument is overruled. Debtor's right to ask for a post-confirmation decrease in plan payments is the converse of Iron Horse's right to ask for a post-confirmation increase. Section 1329 would govern both. The Court will address any motion to modify the confirmed Plan if and when filed.

---

might not be entitled to any of the bonuses. Settling this issue for all the bonuses except half of the first one is reasonable.

[8] At a post-confirmation hearing, the Trustee represented to the Court that she had contacted Iron Horse's counsel on several occasions and offered to discuss the settlement terms with him. The Trustee further represented to the Court that counsel never responded to the offers. Iron Horse's counsel attended this hearing by telephone and did not dispute the Trustee's representations.

I. Sixth Argument: There is Nothing in the Confirmation Order About Iron Horse Being Paid Through the Plan.

Iron Horse initially complained that the Court should direct the Trustee to pay Iron Horse's claim through the Plan rather than allow Debtors to pay it directly. Iron Horse later conceded that it will be paid through the Plan and withdrew its objection on this point.

J. Seventh Argument: A Feasibility Assessment Should be Conducted by the Court. The Plan Should not Have Been Confirmed because Debtors' ability to make the $22,000 payment is speculative.

Iron Horse argues that the Chapter 13 Plan is infeasible and "speculative" because Debtors' ability to pay $22,000 in three years is questionable and the figure could be higher, depending on the outcome of a New Mexico Taxation and Revenue Department ("TRD") "investigation."

The Court has already ruled on the feasibility of the Plan. The Confirmation Order holds that "Debtors have satisfied all requirements of section 1325 of the Bankruptcy Code." Section 1325(a)(6) requires that "the debtor will be able to make all payments under the plan and comply with the plan." There is no need to revisit this issue.

Furthermore, the trial evidence showed that Debtors will be able to make all required Plan payments, including the regular monthly payments, bonus payments, tax refund payments, and the final $22,000 payment. Debtors have stable, substantial income. There was no evidence that either Debtor was at risk of losing his or her job. Their health is good. If Jody Beach is paid bonuses in accordance with past practice, Debtors will be able to pay off the $22,000 obligation before it is due. Likewise, Debtors will have an additional $15,500 available because they will pay off their truck in May 2024, 19 months before the $22,000 payment is due. The monthly truck payment is $816.96 (19 x $816.96 = $15,522.24). Between the bonuses and the extra money available when the truck is paid off, Debtors should have no difficulty making the $22,000 payment.

Few things are certain in this world, and especially in the world of chapter 13 bankruptcy. Certainty, however, is not required by § 1325(a)(6). Rather, Debtors must show a "reasonable likelihood" that they can make their plan payments and comply with the plan. *See, e.g.*, *Marshall v. Blake*, 885 F.3d 1065, 1081 (7th Cir. 2018) ("the plan must have a reasonable likelihood of success as determined by the particular circumstances of the plan and the case"), overruled on other grounds, *In re Wade*, 926 F.3d 447 (7th Cir. 2019); *Austin v. Bankowski*, 519 B.R. 559, 566 (D. Mass. 2014) (same); *In re Anderson*, 28 B.R. 628, 630 (S.D. Ohio 1982) (same). The feasibility standard is not rigorous. *In re Olson*, 553 B.R. 343, 348 (Bankr. N.D. Ill. 2016), citing *In re Bernardes*, 267 B.R. 690, 695 (Bankr. D.N.J. 2001). The Court concluded that Debtors have an excellent chance of making their Plan payments and otherwise complying with the Plan. This conclusion will not be reconsidered.

Iron Horse's argument about the TRD tax claim also must be overruled. TRD filed a $0/unknown proof of claim on June 23, 2021. The bar date for taxing authorities was December 15, 2021. To date, TRD has not amended its proof of claim. It is not clear to the Court that TRD would be able, at this late date, to amend its claim.[9] The Court does not rule on the issue, except

---

[9] *See, e.g., In re Unioil, Inc.*, 962 F.2d 988, 992 (10th Cir. 1992) ("Ordinarily, amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable."); *In re Tanaka Bros. Farms, Inc.*, 36 F.3d 996, 998 (10th Cir. 1994) (quoting *Unioil*). Leave to amend should be "freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *LeaseAmerica Corp. v. Eckel*, 710 F.2d 1470, 1473 (10th Cir. 1983) (quoting *Matter of Commonwealth Corp.*, 617 F.2d 415, 420 (5th Cir. 1980)); *see also Unioil*, 962 F.2d at 993 (quoting *LeaseAmerica*); *Tanaka Bros.*, 36 F.3d at 998 (same). Factors to consider when deciding whether to allow a claim to be amended after the bar date include: (1) Whether the parties or creditors relied on the initial claim, or whether they had reason to know subsequent proofs of claim would follow pending the completion of the audit; (2) Whether other creditors would receive a windfall to which they are not entitled on the merits by the Court not allowing this amendment to the proof of claim; (3) Whether the movant intentionally or negligently delayed in filing its amended claim; (4) The justification, if any, for the failure to request the timely

to say that there are strong policy reasons to insist that creditors file timely claims. Clearly, bankruptcy courts cannot delay plan confirmation indefinitely while a taxing authority mulls over what the debtor might owe. Equally clearly, the Court could not deny confirmation of the Plan on feasibility grounds based on the possibility that TRD may, someday, seek to amend its claim.

K.  Eighth Argument: The Confirmation Order Should Not Have Been Entered Pending Resolution of the Motion to Reconsider.

Lastly, Iron Horse argues that the Confirmation Order should not have been entered while its motion to reconsider was pending. The argument is meritless. It would be poor practice to allow a quickly-filed motion to reconsider to delay entry of an order implementing the Court's ruling. The Court deals with motions to reconsider in the normal course,[10] but in the meantime proceeds in accordance with the ruling at issue.

In addition, the Interim Order was interlocutory. Rule 54(b) says that a court *may* reconsider an interlocutory order, but is not required to do so. Before entry of the Confirmation Order, the Court was free to not reconsider the Interim Order.

Finally, it makes little sense to seek reconsideration of an opinion, a document intended to explain why the Court ruled a certain way. The Court is not criticizing Iron Horse for filing the motion to reconsider before the Confirmation Order was entered (better safe than sorry, when it comes to calculating appeal deadlines), but clearly the Court's proper procedure was to enter the Confirmation Order when presented, before turning to the motion to reconsider.

---

extension of the bar date; and (5) Any other general equitable considerations. *Tanaka Bros.*, 36 F.3d at 998–99 (with alterations) (quoting *In re Oasis Petroleum Corp*, 130 B.R. 89, 92 (Bankr. C.D. Cal. 1991) and *In re Miss Glamour Coat Co., Inc.*, 1980 WL 1668, at *5 (S.D.N.Y.)).

[10] Debtors had 21 days to respond to the motion. *See* NM LBR 9013-(d).

## CONCLUSION

No new law has been passed, no new evidence has been discovered, and no legal error or manifest injustice has been shown. The Court will not alter or amend the Confirmation Order. The motion to reconsider will be denied by separate order.

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 10, 2023
Copies to: Counsel of Record